[Civ. No. 962.   Fifth Dist.   Apr. 3, 1969.]

ANGELINA A. BODDEN, Plaintiff and Respondent, v. COM-
MUNITY NATIONAL BANK OF KERN COUNTY,
Defendant and Appellant.

Wall, Stronge & Byrum and David G. Stronge for Defendant and Appellant.

Deadrich, Bates & Lund and Jack E. Lund for Plaintiff and Respondent.

STONE, J.—Appellant bank appeals from an adverse judgment in a declaratory relief action holding that its deed of trust is unenforceable against respondent's property by reason of a prior recorded homestead.

The property was first purchased by respondent and her former husband in 1958. They lived in the five-room house, described as "old," located on the rear part of a single lot 142 feet 10 inches deep and 53 feet 6 inches wide. Respondent became the sole owner of the property upon her husband's death in 1960. During the year 1961 she married Daniel Bodden, and they resided in the five-room house for approximately a year during construction of a new home in front of the old house. Construction funds were obtained from First Federal Savings & Loan Association, which required respondent to execute a grant deed to herself and Daniel Bodden as joint tenants. This was done on July 24, 1961. The loan was evidenced by a note secured by a deed of trust executed by both respondent and Bodden on August 8, 1961. After moving into the new house, they rented the old one on the back of the lot to friends. It remained rented up to the time of trial.

Respondent and Bodden recorded a declaration of homestead covering the entire parcel of real property, on May 2,

1962, asserting there were two houses located on the property and that the value of the entire premises was $12,500.

During 1961 and 1962, Mr. Bodden, without his wife's knowledge, obtained loans from appellant bank for his use in the operation of a dress shop in the City of Bakersfield. The loans were evidenced by promissory notes signed by him alone; when he failed to meet his payments, the bank required him to secure the unpaid balance of $5,128.31 by executing a deed of trust covering the homesteaded property. It is this deed of trust, recorded on March 22, 1963, that appellant seeks to enforce. Shortly after the declaration of homestead was filed and before he executed the deed of trust, Bodden brought divorce proceedings against respondent.

Eventually Bodden defaulted, and the bank commenced proceedings to sell the property under the terms of the deed of trust. Respondent learned for the first time of the second deed of trust through a notice of default and election to sell that was tacked on her door. She sought the advice of her lawyer immediately upon learning the facts, and this declaratory relief action followed.

The court found that "the homestead attached to the lot in question and the structures thereon," that the homestead had not been abandoned nor modified, and therefore appellant's deed of trust subsequent to the recording of the homestead is unenforceable against any part of the homesteaded property.

There is no contention that the value of the property exceeds the statutory maximum homestead value. Rather, appellant contends the property should be viewed as two separate lots, the back part of the lot and the rear house as a separate parcel exempt from the homestead, upon the theory that regardless of value the rear house is not a necessary part of the homestead.

Even when viewed from a purely physical point of view, appellant's position is untenable in the light of the record, which reflects that the occupants of both houses make use of the entire lot. The distance between the back of the front house and the front of the rear house is 29 feet, and there is no fence or other physical object dividing the front and rear houses unless it would be two spruce trees that grow in the space between them. Respondent's clothes line is located partly alongside the rear house on the back part of the lot, and trash and other waste material is carried across the rear lot and stacked at the back of the property. A picnic table located between the two houses is used by both respondent and her tenants.

Perhaps the greatest barrier to a division of the property into front and rear lots is that the occupants of the rear house must cross over the front of the lot to gain access to the street. Thus, if divided into separate ownership, the back part would have to be provided a right of way over the front portion of the lot. But a court is without authority to carve an easement for a right of way out of the front lot and thus transmute it into a servient tenement and create the rear part a dominant tenement, in derogation of the admittedly valid homestead. Nor should a court strive for a physical division of homesteaded property that defeats the legislative motivation for enactment of the homestead statutes.

The purpose of the law is expounded in *Phelps* v. *Loop*, 64 Cal.App.2d 332 [148 P.2d 674], wherein the court declared valid a homestead upon a building located on a lot 50 feet by 125 feet, although it was improved with a three-story frame building containing six double and three single apartments and nine light housekeeping rooms. One of the double apartments and occasionally one of the light-housekeeping rooms was occupied by the homestead claimants. The rest of the structure was available for renting. The court observed, at page 334: "According to plan, by the diligence of the wife and the rentals obtained the defendants have been enabled to soften the asperities of their struggle for subsistence while maintaining a home. The tranquility of society and the prevalence of a healthy social order are factors which must have been paramount in the legislative mind in ordaining the right of a family to hold and enjoy, without let or hindrance, the realty they have designated as their terrestrial abode."

In the case at bench, respondent received $65 per month rental for the rear house, which she used to make payments on the $67 per month installments due under the terms of the note secured by the first deed of trust covering the entire property. To hold the homestead invalid as to the rear house and back portion of the lot would deprive respondent of this means of preserving the homestead.

We see no valid reason for distinguishing between the three-story building on a single lot with 18 apartments and flats, only one of which was occupied by the homestead claimant, in *Phelps* v. *Loop, supra,* and the two houses here, located one behind the other on a single small lot. Again we resort to the language in *Phelps,* where the court said, at page 334: "Where the building occupied by a family is suitable for a home and is used for that purpose, the owner is not to be

deprived of his homestead rights merely because a part of the building is used for supplementing the family income. If it be determined that the very business carried on by the homesteader is for the purpose of maintaining the home, the fact of the conduct of such other activity does not defeat the owner's right to designate the property in his declaration. Using a building so occupied, even chiefly for business purposes or renting a part of it, is not inconsistent with the homestead right. Where premises are acquired for, and are actually occupied as, the bona fide home of a family, the head may select it as a homestead even though incidentally a major portion of the building may be used by him for deriving revenue. His conduct of business there is an incidental and subordinate purpose. Under such circumstances the business is carried on to enable the family to maintain a home. Although only one apartment in a building is dedicated to residence purposes, yet if it is actually occupied by the owner and his family and if such occupancy is not merely incidental to a business conducted there, the building and the land on which it is situated may be selected as a homestead.''

█ Even though this is not a case of balancing equities, nevertheless we find it significant that respondent in no way misled appellant; the money was loaned to her former husband without respondent's knowledge; there was no attempt by her to defraud appellant. On the other hand, appellant, a lending institution versed in matters of title, had constructive notice of the recorded homestead. With such notice it took the deed of trust from the husband to secure a pre-existing debt without asking respondent to release the homestead which preceded it. (Civ. Code, § 1242.)

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.